## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IN RE:

**LOUIS SANTANA, JR.**                    **CASE NO.: 16-bk-10318-CPM**
**LUANA L. SANTANA**                      **CHAPTER: 7**

**Debtor(s)**

_____/

## DEBTORS' MOTION TO SELL HOMESTEAD REAL ESTATE

### NOTICE OF OPPURTUNITY TO
### OBJECT AND REQUEST FOR HEARING

Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.

If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at the Sam M. Gibbons U.S. Courthouse, 801 N. Florida Avenue, Suite 727, Tampa, FL 33602 and serve a copy on the movant's attorney, Nick Fowler, 8751 N. Himes Ave, Tampa, FL 33614, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or the consider the response and grant or deny the relief requested without a hearing.

If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

Now comes DEBTORS LOUIS SANTANA, JR. AND LUANA L. SANTANA ("Debtor"), by and through the undersigned, and hereby who respectfully requests the Court and Trustee to allow the sale of homestead real estate, and state the following:

1.    Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. § 1334 and §157(b)(2)(K); 11 U.S.C. § 362; and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Courts generally.

2.    On December 2, 2016 Debtor filed for relief under Chapter 7 of the Bankruptcy Code.

3.    The Debtor has a fee simple interest in the homestead real estate, commonly known as 16841 Ivy Lake Drive, Odessa, FL 33556 (the "Property").

4.    The Debtor's Statement of Intentions surrenders the Property.

5.      At the time the case was filed, the Debtors disclosed the value of the Property at $330,166.00. The Debtors also disclosed on Schedule D (at the time the case was filed) that there was one mortgage in first position on the Property held by secured creditor Wells Fargo Home Mortgage in the amount of $446,529.00. Furthermore, in Schedule D, it was disclosed that there were two associations with interest in the property; Ivy Lake Estates Association, Inc., which had a scheduled arrearage of $2,751, and Suncoast Crossings Master Association Inc., which had no arrearage scheduled.

6.      The Debtor has entered into a contract contingent upon the Court's approval with Joe and Jennifer Haines to sell the real estate for a sum of Three Hundred Sixty-Nine Thousand Nine Hundred Dollars ($369,900.00).  (Exhibit A.) The Debtors anticipate that the sale proceeds will not be sufficient to fully satisfy all liens and encumbrances on the real estate and to pay all normal costs of sale including realtor fees. After all encumbrances and liens are satisfied, and all costs of sale are paid, the Debtors anticipate that there will be a remainder of approximately zero dollars ($0.00) from the net proceeds. (Exhibit B.)

WHEREFORE, the Debtors respectfully request that the Court issue an order allowing them to sell their interest in the Property for the sum of Eighty Eight Thousand Dollars ($369,900.00).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of July, 2017 a true and correct copy of the foregoing has been deposited with an Official Notice Provider pursuant to Federal Rules of Bankruptcy Procedure, Rule 2002(g)(4) who is to furnish a copy of the foregoing to the Matrix which will be attached to the Certificate of Service subsequently filed by such Official Notice Provider on behalf of the undersigned.

By: / S / Nick Fowler
Nick Fowler, Esq.
Florida Bar No.:  81856
STAMATAKIS + THALJI + BONANNO
8751 North Himes Avenue
Tampa, Florida 33614
(813) 282-9330 (telephone)
(813) 282-8648 (facsimile)
Trial Attorney for Debtor

AuthentiSign ID: 4D4D2C3A-C616-4D8A-82B5-2EC97D48A088

## "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**   ⌂ⓘⓘ FloridaRealtors®

1* **PARTIES:** _____ LOUIS & LUANA L SANTANA _____ ("Seller"),
2* and _____ Joe and Jennifer Haines _____ ("Buyer"),
3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And
5 Purchase and any riders and addenda ("Contract"):
6 **1. PROPERTY DESCRIPTION:**
7* (a) Street address, city, zip: _____ 16814 IVY LAKE DR, ODESSA, FL 33556-6022 _____
8* (b) Property is located in: _Pasco_ County, Florida. Real Property Tax ID No.: _31-26-18-0010-00100-0160_
9* (c) Real Property: The legal description is IVY LAKE ESTATES - PARCEL ONE - PHASE ONE PB 44 PG 014
10 BLOCK 1 LOT 16 OR 5623 PG 599
11
12 together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13 attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14 by other terms of this Contract.
15 (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16 which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17 purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18 drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security
19 gate and other access devices, and storm shutters/panels ("Personal Property").
20* Other Personal Property items included in this purchase are: _____   *Buyers*
21
22 Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer. *initials*
23* (e) The following items are excluded from the purchase: _____ REFRIGERATOR, WASHER AND DRYER,   *(JH)*
24 CUSTOM BLINDS   *(JH)*

### PURCHASE PRICE AND CLOSING

26* **2. PURCHASE PRICE** (U.S. currency): ............................................... *LS  ees*...........$ 369,900.00
27* (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) ......$ 5,000.00
28 The initial deposit made payable and delivered to "Escrow Agent" named below
29* **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☐ is to be made within _____ (if left
30 blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31 OPTION (ii) SHALL BE DEEMED SELECTED.   **UNITY ONE TITLE**
32* Escrow Agent Information: Name: _____
33* Address: _8751 N. Himes    TAMPA, FL  33614_
34* Phone: _813-282-8490_ E-mail: _JHC.SHARXO1 WIT9ONE.CoM_ Fax: _813-282-8648_
35* (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36* days after Effective Date ...........................................................................................$
37 (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38* (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........$ 295,920.00
39* (d) Other: _____ ................$
40 (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41* transfer or other **COLLECTED** funds ....................................................................$ 68,980.00
42 NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44 (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45* _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned
46 to Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the
47 day the counter-offer is delivered.
48 (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49 initialed and delivered this offer or final counter-offer ("Effective Date").
50 **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51 and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52* ("Closing") on _____ October 6, 2017 _____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials _JH_ _JH_          Page 1 of 12          Seller's Initials _LS_ _ees_
FloridaRealtors/FloridaBar-ASIS-4x   Rev.2/16 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial# 082704-200149-9454103

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]
Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

Authentisign ID: 4D4D2C3A-C616-4D8A-82B5-2EC97D48A088

**5. EXTENSION OF CLOSING DATE:**

    (a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

    (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i) disruption of utilities or other services essential for Closing or (ii) Hazard, Wind, Flood or Homeowners' insurance, to become unavailable prior to Closing, Closing shall be extended a reasonable time up to 3 days after restoration of utilities and other services essential to Closing and availability of applicable Hazard, Wind, Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred within __14__ (if left blank, then 14) days after Closing Date, then either party may terminate this Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**6. OCCUPANCY AND POSSESSION:**

    (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

    (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.

## FINANCING

**8. FINANCING:**

    ☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

    ☐ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☒ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan on the following terms within __360__ (if left blank, then 45) days after Effective Date ("Loan Commitment Date") for **(CHECK ONE):** ☒ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of __360__ (if left blank, then 30) years ("Financing").

    Buyer shall make mortgage loan application for the Financing within __5__ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment") and thereafter to close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such status and progress to Seller and Broker.

    Upon Buyer's receipt of Loan Commitment, Buyer shall provide written notice of same to Seller. If Buyer does not receive Loan Commitment by Loan Commitment Date, then thereafter either party may cancel this Contract **up to the earlier of:**

Buyer's Initials **JH    JH**                     Page 2 of 12                    Seller's Initials [ ☒S ]   [ ees ]

Consimplicity

Authentisign ID: 4D4D2C3A-C616-4D8A-82B5-2EC97D48A088

107        (i.) Buyer's delivery of written notice to Seller that Buyer has either received Loan Commitment or elected
108           to waive the financing contingency of this Contract; or
109        (ii.) 7 days prior to the Closing Date specified in Paragraph 4, which date, for purposes of this Paragraph
110           8(b) (ii), shall not be modified by Paragraph 5(a).

111 If either party timely cancels this Contract pursuant to this Paragraph 8 and Buyer is not in default under the terms
112 of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
113 obligations under this Contract. If neither party has timely canceled this Contract pursuant to this Paragraph 8,
114 then this financing contingency shall be deemed waived by Buyer.

115 If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter
116 close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related
117 conditions of the Loan Commitment have not been met (except when such conditions are waived by other
118 provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is insufficient to meet terms
119 of the Loan Commitment; or (4) the loan is not funded due to financial failure of Buyer's lender, in which event(s)
120 the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller from all further obligations under this
121 Contract.
122* ☐ (c) Assumption of existing mortgage (see rider for terms).
123* ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

124                             **CLOSING COSTS, FEES AND CHARGES**

125 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
126    (a) **COSTS TO BE PAID BY SELLER:**
127     • Documentary stamp taxes and surtax on deed, if any    • HOA/Condominium Association estoppel fees
128     • Owner's Policy and Charges (if Paragraph 9(c) (i) is checked)    • Recording and other fees needed to cure title
129     • Title search charges (if Paragraph 9(c) (iii) is checked)    • Seller's attorneys' fees
130*     • Municipal lien search (if Paragraph 9(c) (i) or (iii) is checked)    • Other:_____
131        If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
132        a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
133        Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall
134        pay such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
135    (b) **COSTS TO BE PAID BY BUYER:**
136     • Taxes and recording fees on notes and mortgages    • Loan expenses
137     • Recording fees for deed and financing statements    • Appraisal fees
138     • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)    • Buyer's Inspections
139     • Survey (and elevation certification, if required)    • Buyer's attorneys' fees
140     • Lender's title policy and endorsements    • All property related insurance
141     • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
142     • Municipal lien search (if Paragraph 9(c) (ii) is checked)      9 (c) (iii) is checked.)
143*     • Other: _____
144*    (c) **TITLE EVIDENCE AND INSURANCE:** At least ___15___ (if left blank, then 15, or if Paragraph 8(a) is checked,
145        then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a
146        Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
147        Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
148        obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
149        a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title
150        policy premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as
151        set forth below. The title insurance premium charges for the owner's policy and any lender's policy will be
152        calculated and allocated in accordance with Florida law, but may be reported differently on certain federally
153        mandated closing disclosures and other closing documents.
154        **(CHECK ONE):**
155*        ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
156        premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
157        endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
158        provider(s) as Buyer may select; or
159*        ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
160        services related to Buyer's lender's policy, endorsements and loan closing; or
161*        ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's
162        policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title

Buyer's Initials _JH_ _JH_           **Page 3 of 12**          Seller's Initials _LS_ _ees_

FloridaRealtors/FloridaBar-ASIS-4x   Rev.2/16 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial# 082704-200149-9454103

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]
Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

AuthentiSign ID: 4D4D2C3A-C616-4D8A-82B5-2EC97D48A088

163 evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search;
164 and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for
165 Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more
166* than $ _____ (if left blank, then $200.00) for abstract continuation or title search ordered or
167 performed by Closing Agent.
168 (d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
169 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
170 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
171* (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
172* _____ at a cost not to exceed $_____. A home
173 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
174 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
175 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
176 ("public body") does not include a Condominium or Homeowner's Association) that are certified, confirmed and
177 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
178 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
179 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
180 be paid in installments (**CHECK ONE):**
181* ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
182 Installments prepaid or due for the year of Closing shall be prorated.
183* ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
184 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
185 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
186 (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

187 **DISCLOSURES**

188 **10. DISCLOSURES:**
189 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
190 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
191 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
192 radon and radon testing may be obtained from your county health department.
193 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure,
194 Seller does not know of any improvements made to the Property which were made without required permits
195 or made pursuant to permits which have not been properly closed.
196 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned
197 or desires additional information regarding mold, Buyer should contact an appropriate professional.
198 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
199 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
200 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
201 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish
202 and Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s)
203 and /or flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance
204 coverage through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C.
205 §4012a, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left blank,
206* then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and
207 Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of
208 buildings and flood zone designation of Property. The National Flood Insurance Program may assess
209 additional fees or adjust premiums for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures
210 (residential structures in which the insured or spouse does not reside for at least 50% of the year) and an
211 elevation certificate may be required for actuarial rating.
212 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information
213 Brochure required by Section 553.996, F.S.
214 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
215 mandatory.
216 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
217 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
218 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

Buyer's Initials *JH*  *JH*                Page 4 of 12                Seller's Initials ⌐✓S⌐  ⌐ees⌐

FloridaRealtors/FloridaBar-ASIS-4x    Rev.2/16 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial# 082704-200149-9454103

AuthentiSign ID: 4D4D2C3A-C616-4D8A-82B5-2EC97D48A088

219 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
220 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED
221 TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
222 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN
223 HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT
224 THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

225 (i) **FIRPTA TAX WITHHOLDING:** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by
226 the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA,
227 which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can
228 provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform
229 Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining
230 to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective
231 rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

232 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which
233 are not readily observable and which have not been disclosed to Buyer. Except as provided for in the
234 preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either
235 express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in
236 writing Seller has received no written or verbal notice from any governmental entity or agency as to a
237 currently uncorrected building, environmental or safety code violation.

238 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

239 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
240 Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
241 IS Maintenance Requirement").

242 **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
243* (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have* __15__ *(if left blank, then 15)*
244 *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
245 *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
246 *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by*
247 *delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer*
248 *timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and*
249 *Seller shall be released of all further obligations under this Contract; however, Buyer shall be*
250 *responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the*
251 *Property resulting from such inspections, and shall provide Seller with paid receipts for all work done*
252 *on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer*
253 *exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property*
254 *and any violation of governmental, building, environmental, and safety codes, restrictions, or*
255 *requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be*
256 *responsible for any and all repairs and improvements required by Buyer's lender.*

257 (b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date
258 prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through
259 (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of
260 Personal Property are on the Property and to verify that Seller has maintained the Property as required by the
261 AS IS Maintenance Requirement and has met all other contractual obligations.

262 (c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's
263 inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to
264 Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control
265 relating to improvements to the Property which are the subject of such open or needed Permits, and shall
266 promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to
267 resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary
268 authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates
269 of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or
270 become obligated to expend, any money.

Buyer's Initials __JH__ __JH__                Page 5 of 12                Seller's Initials __LS__ __ees__

FloridaRealtors/FloridaBar-ASIS-4x   Rev.2/16 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial# 082704-200149-9454103

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]
Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

AuthentiSign ID: 4D4D2C3A-C616-4D8A-82B5-2EC97D48A088

271   (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
272       cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
273       to Buyer.

274                                    **ESCROW AGENT AND BROKER**

275   13. **ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
276       and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
277       within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions
278       of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting
279       demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent
280       may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties
281       or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow
282       until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall
283       determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction
284       of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such
285       action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate,
286       except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate
287       broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve
288       escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.
289       Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
290       or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
291       attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent.
292       Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is
293       due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing
294       or termination of this Contract.
295   14. **PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
296       square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
297       professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
298       and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
299       Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
300       public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
301       **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
302       **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
303       **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
304       individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
305       employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees
306       at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection
307       with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
308       information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
309       failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
310       beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
311       recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv) products or services
312       provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such
313       vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors
314       and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not
315       relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14,
316       Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this
317       Contract.

318                             **DEFAULT AND DISPUTE RESOLUTION**

319   15. **DEFAULT:**
320       (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
321           including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the
322           Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this
323           Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further
324           obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity
325           to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon

Buyer's Initials **JH**  **JH**                     Page 6 of 12                     Seller's Initials **LS**  **ees**

FloridaRealtors/FloridaBar-ASIS-4x   Rev.2/16 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial# 032704-200149-9454103

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]
Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

Authentisign ID: 4D4D2C3A-C616-4D8A-82B5-2EC97D43A088

326 default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however,
327 Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to
328 pay to Cooperating Broker.
329 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
330 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
331 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
332 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
333 performance.
334 This Paragraph 15 shall survive Closing or termination of this Contract.
335 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
336 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be
337 settled as follows:
338 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
339 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
340 16(b).
341 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
342 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
343 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
344 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
345 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
346 16 shall survive Closing or termination of this Contract.
347 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
348 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
349 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to
350 recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting
351 the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

352 **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

353 **18. STANDARDS:**
354 **A. TITLE:**
355 (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
356 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto,
357 shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by
358 Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title
359 insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the
360 Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land
361 use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters
362 appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of
363 record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property
364 lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes
365 for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if
366 additional items, attach addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES.**
367 If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title
368 defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The
369 Florida Bar and in accordance with law.
370 (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify
371 Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and
372 it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after
373 date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period")
374 after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify
375 Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller
376 will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties
377 will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of
378 Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after
379 expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to
380 exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects
381 ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]
Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

382      Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's
383      receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby
384      releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller
385      is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer
386      shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this
387      Contract.

388      **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
389      encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
390      governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
391      such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
392      than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
393      Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
394      prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
395      preparation of such prior survey, to the extent the affirmations therein are true and correct.

396      **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
397      the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of
398      access.

399      **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
400      tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
401      deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
402      the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
403      and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
404      Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to
405      Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice
406      to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating
407      this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations
408      under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's
409      obligations thereunder.

410      **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
411      statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
412      repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
413      improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
414      general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
415      names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all
416      charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages
417      have been paid or will be paid at Closing.

418      **F. TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.**
419      Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or
420      dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or
421      occur on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the
422      Property is located) of the next business day.

423      **G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
424      liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused
425      or prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God,
426      unusual transportation delays, wars, insurrections, and acts of terrorism, and which, by exercise of reasonable diligent
427      effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
428      Closing Date, will be extended for the period that the Force Majeure prevents performance under this Contract,
429      provided, however, if such Force Majeure continues to prevent performance under this Contract more than 14
430      days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other
431      and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under
432      this Contract.

433      **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
434      personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
435      described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
436      transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in
437      this Contract.

438      **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

Buyer's Initials _JH_ _JH_        Page 8 of 12        Seller's Initials _ZS_ _ees_

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

(i) **LOCATION:** Closing will take place in the county where the Real Property is located at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.

(ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit (s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable the survey, flood elevation certification, and documents required by Buyer's lender.

(iii) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided,

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]

Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

Authentisign ID: 4D4D2C3A-C616-4D8A-82B5-2EC97D48A088

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

495 however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be
496 contingent upon, nor extended or delayed by, such Exchange.
497 **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
498 **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
499 be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest.
500 Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery
501 given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be
502 as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal
503 delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and
504 any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use
505 of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.
506 **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
507 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
508 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or
509 change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties
510 intended to be bound by it.
511 **Q.   WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
512 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
513 rights.
514 **R.   RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
515 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
516 **S.   COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED"** means any checks tendered or
517 received, including Deposits, have become actually and finally collected and deposited in the account of
518 Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents
519 may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's
520 accounts.
521 **T.   LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and
522 conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower. Neither a
523 pre-approval letter nor a prequalification letter shall be deemed a Loan Commitment for purposes of this Contract.
524 **U.   APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
525 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
526 county where the Real Property is located.
527 **V.   FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** If a seller of U.S. real property is a
528 "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires the buyer of the real
529 property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount
530 to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has
531 obtained  a Withholding Certificate from the IRS authorizing a reduced amount of withholding. Due to the
532 complexity and  potential risks of FIRPTA, Buyer and Seller should seek legal and tax advice regarding
533 compliance, particularly if an "exemption" is claimed on the sale of residential property for $300,000 or less.
534 (i)   No withholding is required under Section 1445 if the Seller is not a "foreign person," provided Buyer accepts
535 proof of same from Seller, which may include Buyer's receipt of certification of non-foreign status from Seller,
536 signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S.
537 taxpayer identification number and home address (or office address, in the case of an entity), as provided for in
538 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold the applicable percentage of the amount realized by Seller
539 on the transfer and  timely remit said funds to the IRS.
540 (ii)  If Seller has received a Withholding Certificate from the IRS which provides for reduced or eliminated
541 withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced
542 sum, if any required, and timely remit said funds to the IRS.
543 (iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and
544 has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
545 received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by
546 Seller on the transfer  and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the
547 funds in escrow, at  Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated
548 by the parties, to be  subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or
549 remitted directly to  the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
550 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
551 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the

Buyer's Initials **JH   JH**                     Page 10 of 12                     Seller's Initials **∠S**  **ees**

FloridaRealtors/FloridaBar-ASIS-4x   Rev 2/16 © 2015 Florida Realtors® and The Florida Bar   All rights reserved.
Serial#: 082704-200149-9454103

*formsimplicity*

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]

Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

AuthentiSign ID: 4D4D2C3A-C616-4D8A-82B5-2EC97D48A088

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

552 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
553 disbursement in accordance with the final determination of the IRS, as applicable.
554 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
555 8288 and 8288-A, as filed.
556 **W. RESERVED**
557 **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
558 *and against any real estate licensee involved in the negotiation of this Contract for any damage or*
559 *defects pertaining to the physical condition of the Property that may exist at Closing of this Contract and*
560 *be subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer.*
561 *This provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall*
562 *survive Closing.*
563 **ADDENDA AND ADDITIONAL TERMS**

564 **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into
565 this Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A. Condominium Rider | ☐ K. RESERVED | ☐ T. Pre-Closing Occupancy |
| ☒ B. Homeowners' Assn. | ☐ L. RESERVED | ☐ U. Post-Closing Occupancy |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | ☐ V. Sale of Buyer's Property |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control Line | ☐ W. Back-up Contract |
| ☐ E. FHA/VA Financing | ☐ O. Insulation Disclosure | ☐ X. Kick-out Clause |
| ☐ F. Appraisal Contingency | ☐ P. Lead Paint Disclosure (Pre-1978) | ☐ Y. Seller's Attorney Approval |
| ☐ G. Short Sale | ☐ Q. Housing for Older Persons | ☐ Z. Buyer's Attorney Approval |
| ☐ H. Homeowners'/Flood In | ☐ R. Rezoning | ☐ AA. Licensee Property Interest |
| ☐ J. Interest-Bearing Acct. | ☐ S. Lease Purchase/ Lease Option | ☐ BB. Binding Arbitration |

566 **20. ADDITIONAL TERMS:**
568 *Continued on Court Approval +*
570 *Short Sale Approval.*

583 **COUNTER-OFFER/REJECTION**

584 ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
585 deliver a copy of the acceptance to Seller).
586 ☐ Seller rejects Buyer's offer.

587 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
588 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

589 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

590 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
591 *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*

Buyer's Initials JH  JH    Page 11 of 12    Seller's Initials
FloridaRealtors/FloridaBar-ASIS-4x   Rev.2/16 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial# 082704-200149-9464103

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]
Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

Authentisign ID: 4D4D2C3A-C616-4D8A-82B5-2EC97D48A088

592   *should be negotiated based upon the respective interests, objectives and bargaining positions of all interested*
593   *persons.*

594   AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
595   BE COMPLETED.

596
597*   Buyer: *Joe Haines* _____   Date: 7/7/2017 _____

598
599*   Buyer: *Jennifer Haines* _____   Date: 7/7/2017 _____

600           Authentisign                                                      07/08/2017
601*   Seller: _Long Santana_____   Date: _____
602            7/8/2017 11:40:39 AM EDT
603*   Seller: _Pilong e Santana_____   Date: 07/08/2017 _____
604            7/8/2017 11:41:50 AM EDT
605   Buyer's address for purposes of notice           Seller's address for purposes of notice
606*   _____           _____
607*   _____           _____
608*   _____           _____

609   **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
610   to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent
611   to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the
612   parties and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the
613   escrowed funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing
614   Broker to Cooperating Brokers.

615*            Brian Walek                                      Gus  Vollmer
616   **Cooperating Sales Associate, if any**            **Listing Sales Associate**

617*            Florida Family R E Ser Inc                       Exit Elite Realty
618   **Cooperating Broker, if any**                     **Listing Broker**

Buyer's Initials **JH     JH** _____     Page 12 of 12     Seller's Initials **[LS]**  **[ees]**
FloridaRealtors/FloridaBar-ASIS-4x   Rev.2/16 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial# 082704-200149-9454103

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]
Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

AuthentiSign ID: 57A883E6-7D09-484A-BF43-52B89894EC29

## Addendum to Contract for Residential Sale and Purchase  FloridaRealtors·

1  If initialed by all parties, the terms below will be incorporated into the Contract for Residential Sale and Purchase
2* between _____ LOUIS & LUANA L SANTANA _____ ("Seller")
3* and _____ Joe and Jennifer Haines _____ ("Buyer")
4* concerning the Property described as 16814 IVY LAKE DR, ODESSA, FL 33556-6022 _____
5

6* (_UH_) (_UH_) - (_ᴌS_) (_ees_) **J. Homeowners' Association:** The Property is located in a community with a
7* ☐ voluntary ☐ mandatory (see the Disclosure Summary below) homeowners' association ("Association"). **Seller's**
8  warranty under Paragraph **8** of this Contract, risk of loss under Paragraph **9** of this Contract, or As Is with Right to
9  Inspect Addendum (if applicable) extend only to the Property and does not extend to common areas or facilities
10  described below.

11  **Notice:** Association documents may be obtained from the county record office or, if not a public record, from the
12  developer or Association manager. The Property may be subject to recorded restrictive covenants governing the use
13  and occupancy of properties in the community and may be subject to special assessments.

14  **1. Association Approval:** If the Association documents give the Association the right to approve **Buyer** as a
15  purchaser, this Contract is contingent on such approval by the Association. **Buyer** will apply for approval within
16* _____ days (5 days if left blank) after Effective Date and use diligent effort to obtain approval, including making
17  personal appearances and paying related fees if required. **Seller** and **Buyer** will sign and deliver any documents
18  required by the Association to complete the transfer. If **Buyer** is not approved, this Contract will terminate; and
19  **Buyer's** deposit(s) will be refunded unless this Contract provides otherwise.

20  **2. Right of First Refusal:** If the Association has a right of first refusal to buy the Property, this Contract is contingent
21  on the Association deciding not to exercise such right. **Seller** will, within 3 days after receipt of the Association's
22  decision, give **Buyer** written notice of the decision. If the Association exercises its right of first refusal, this
23  Contract will terminate, **Buyer's** deposit(s) will be refunded unless this Contract provides otherwise, and **Seller**
24  will pay broker's full commission at Closing in recognition that broker procured the sale.

25  **3. Fees:** Buyer will pay any application, transfer, and initial membership fees charged by the Association. **Seller** will
26  pay all fines imposed against the Property as of Closing and any fees the Association charges to provide
27  information about its fees or the Property and will bring maintenance and similar periodic fees and rents on any
28  recreational areas current as of Closing. If, after Effective Date, the Association imposes a special or other
29  assessment for improvements, work, or services, **Seller** will pay all amounts due before Closing and **Buyer** will
30* pay all amounts due on or after Closing. If special assessments may be paid in installments ☐**Seller** ☐**Buyer**
31  (**Buyer** if left blank) will pay installments due after Closing. If **Seller** is checked, **Seller** will pay the assessment in
32  full before or at Closing. **Seller** represents that he/she is not aware of any pending special or other assessment
33* that has been levied by the Association, except as follows: _____

34
35  **Seller** represents that he/she is not aware of any pending special or other assessment that has been an item on
36  the agenda or reported in the minutes of the Association within 12 months before Effective Date ("Pending"),
37* except as follows: _____

38
39  If special or other assessments, levied or Pending, exist as of Effective Date and have not been disclosed
40  above by **Seller**, then **Seller** will pay such assessments in full before or at Closing.

41  The following dues, maintenance, and/or fees are currently charged by the Association:
42* $ 345,31 per QUARTER to IVY LAKE ESTATES
43* $_____ per_____ to_____
44* $_____ per_____ to_____

CRSP-15 (J. Homeowners' Association Addendum)    Rev 6/17
Serial# 072521-500149-9453926

**(See Continuation)**
©2017 Florida Realtors·
formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]
Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

AuthentiSign ID: 57A883E6-7D09-484A-BF43-52B89894EC29

## J. Homeowners' Association Addendum (Continued)

45 **4. Damage to Common Elements:** If any portion of the common elements is damaged due to fire, hurricane, or
46 other casualty before Closing, either party may cancel this Contract and **Buyer's** deposit(s) will be refunded if (i)
47 as a result of damage to the common elements, the Property appraises below the purchase price and either
48 the parties cannot agree on a new purchase price or **Buyer** elects not to proceed, or (ii) the Association
49 cannot determine the assessment attributable to the Property for the damage at least 5 days before
50 Closing, or (iii) the assessment determined or imposed by the Association attributable to the Property for the
51* damage to the common elements is greater than $_____ or _____% (1.5% if left blank) of the
52 purchase price.

53 **5. Disclosure Summary for Mandatory Associations:** IF THE DISCLOSURE SUMMARY REQUIRED BY
54 SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE
55 PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS
56 VOIDABLE BY **BUYER** BY DELIVERING TO **SELLER** OR **SELLER'S** AGENT OR REPRESENTATIVE
57 WRITTEN NOTICE OF THE **BUYER'S** INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF
58 THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY
59 PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. **BUYER'S** RIGHT TO VOID THIS
60 CONTRACT SHALL TERMINATE AT CLOSING.

61* DISCLOSURE SUMMARY FOR (Name of Community): *Tuv Lake*

62 (a) AS A PURCHASER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER
63 OF A HOMEOWNERS' ASSOCIATION.
64 (b) THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS GOVERNING THE USE AND
65 OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.
66 (c) YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE
67* SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $ *545.91*
68* PER *QUARTER*. YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS
69 IMPOSED BY THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF
70* APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.
71 (d) YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY,
72 COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
73 (e) YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY
74 HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.
75 (f) THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER
76 COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE
77* HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $_____
78* PER _____.
79 (g) THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE
80 APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.
81 (h) THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND,
82 AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE
83 ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.
84 (i) THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM
85 THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT
86 RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

87 **Buyer** acknowledges receipt of this Disclosure Summary before signing this Contract.

88* *Joe Haines*                         7/7/2017                *Jennifer Haines*                     7/7/2017
89 **Buyer**                                 Date                        **Buyer**                                    Date

Buyer (*JH*) (*JH*) and Seller (____) (____) acknowledge receipt of a copy of this page.

CRSP-15 (J. Homeowners' Association Addendum)   Rev 6/17
Serial# 072521-500149-9453926

©2017 Florida Realtors®
formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]

Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

Authentisign ID: E91A8EA6-9765-4BF6-A2D2-6E30AA15CCAB

## Addendum to Contract for Residential Sale and Purchase     FloridaRealtors·

1    If initialed by all parties, the terms below will be incorporated into the Contract for Residential Sale and Purchase
2*   between _____ LOUIS & LUANA L SANTANA _____ ("Seller")
3*   and _____ Joe and Jennifer Haines _____ ("Buyer")
4*   concerning the Property described as 16814 IVY LAKE DR, ODESSA, FL 33556-6022 _____
5    _____

6*   *JH* *JH* - *LS* *LS* AA. Short Sale Approval: This Contract is contingent upon Seller obtaining
7    "Short Sale Approval" from Seller's lender(s) and all other lien holders (collectively "Lender"). Short Sale Approval
8    means Lender (i) approves the terms of this Contract and the settlement statement; (ii) agrees to a reduced payoff
9    and to provide satisfaction(s) and/or releases of the mortgage(s) and any other lien(s) encumbering the
10   Property ("Mortgage(s)"); and (iii) agrees to release Seller from any claim(s) for a deficiency under the Mortgage(s)
11   and note(s) secured by the Mortgage(s). Seller must deliver a copy of the Short Sale Approval to Buyer within 7 days
12*  after receipt but no later than _____ days (45 days if left blank) after Effective Date ("Approval Deadline").

13   If Lender makes an offer to Seller that does not include items (i) through (iii) above or contains additional terms or
14   obligations affecting Seller, Seller may, but is not required to, accept the offer. If Seller accepts the offer, it will be
15   deemed Short Sale Approval, and Seller will deliver a copy to Buyer as provided above.

16*  1. (Check if applicable) ☐ Seller's Lender has set the list price and approved this Property for short sale.

17   2. Short Sale Application; Buyer Cooperation: Seller will make application for short sale with Lender within
18*  _____ days (10 days if left blank) after Effective Date (Short Sale Application Date), unless Seller has already
19   done so; and Buyer will cooperate with Lender in all reasonable respects to effectuate the short sale.

20   3. Time Periods: All time periods set forth in this Contract will begin on the day after Seller delivers Short Sale
21   Approval to Buyer, except time periods for Approval Deadline, Short Sale Application Date, Contract
22*  Termination Date, and the following items, if checked, will begin as set forth in this Contract: ☐ Initial Deposit
23*  ☐ any inspection provided for in this Contract that Buyer deems necessary ☐ other (specify):
24*  _____
25   _____

26   4. Offers; Back-up Contracts: If required by Lender, Seller may receive additional offers and submit such offers
27*  to Lender, even if such offers are not accepted by Seller. (Check one) Seller ☐ may ☐ may not enter into back-
28   up contracts. (If neither box is checked, Seller may enter into back-up contracts.)

29*  5. Closing Date; Termination: Seller and Buyer agree to extend the Closing Date in this Contract _____ days
30   (15 days if left blank) if Lender requires additional time to complete the short sale. If Seller does not deliver a
31   copy of the Short Sale Approval by Approval Deadline, either party may thereafter terminate this Contract by
32   delivering written notice to the other; and Buyer's deposit(s) will be refunded. If (i) Seller has not delivered a
33*  copy of the Short Sale Approval to Buyer within _____ days (90 days if left blank) after Effective Date
34   (Contract Termination Date); or (ii) Seller fails to complete the short sale; or (iii) the Property is sold at a
35   foreclosure sale before Closing, this Contract will terminate; and Buyer's deposit(s) will be refunded.

36   6. Buyer Acknowledgement: Buyer acknowledges that (i) Lender is not a party to this Contract and is
37   not obligated to approve this Contract; (ii) Buyer is responsible for understanding Lender's policies and
38   procedures; (iii) Lender may impose restrictions on Buyer's ability to resell the Property; and (iv) Seller and
39   Broker are not liable for delays caused by Lender, failure of Lender to approve or complete the short sale, or any
40   costs (such as payments for loan applications, inspections, and appraisals) associated with this short sale.

41   7. Seller Acknowledgment: Seller acknowledges that (i) a short sale may be a taxable event to Seller, and
42   Seller's credit may be negatively impacted; (ii) Seller has been advised to consult with appropriate legal and tax
43   professionals and to rely on such professionals and not Broker for legal and tax advice; and (iii) Seller
44   releases Broker and its associates from all liability regarding the consequences of a short sale.

CRSP-15 (AA Short Sale Approval Addendum)   Rev 6/17                                    ©2017 Florida Realtors®
Serial# 030283-600149-9453893

Electronically Signed using eSignOnline™[ Session ID : 926b841c-034e-4a20-9de4-feeaefc7af30 ]
Electronically Signed using eSignOnline™[ Session ID : cba7ccbd-ee65-40f1-a59b-db3bd3e5c043 ]

| A. | SETTLEMENT STATEMENT | B. | TYPE OF LOAN |
|---|---|---|---|

**Unity One, LLC**

8751 N. Himes Avenue
Tampa, Florida 33614
813-282-8485  fax: 813-282-8648

| B. | TYPE OF LOAN |
|---|---|
| 1. [X] Conventional | 2. [ ] FHA |
| 3. [ ] VA | 4. [ ] _____ |
| 5. File Number: 17-1123 | 6. Loan Number: |
| 7. Mortgage Ins. Case No.: | |

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (poc) were paid outside the closing. They are shown here for informational purposes and are not included in the totals.*

| | |
|---|---|
| D. Borrower: | Joe Haines and Jennifer Haines, husband and wife |
| E. Seller: | louis Santana and Luana Santana, husband and wife |
| F. Lender: | |
| G. Property: | 16814 Ivy Lake Dr<br>Odessa, Florida 33556 |
| H. Settlement Agent: | Unity One, LLC |
| Place of Settlement: | 8751 N. Himes Avenue, Tampa, Florida 33614  Hillsborough County |
| I. Settlement Date: | September 29, 2017 |

| 100. Gross Amount Due From Borrower: | | 400. Gross Amount Due To Seller: | |
|---|---|---|---|
| 101. Sale Price of Property | 369,900.00 | 401. Sale Price of Property | 369,900.00 |
| 102. Sale Price of Any Personal Property Included in Sale | | 402. Sale Price of Any Personal Property Included in Sale | |
| 103. Closing Costs Paid at Closing (J) | 4,426.73 | 403. | |
| **Adjustments for Items Paid by Seller in Advance:** | | **Adjustments for Items Paid by Seller in Advance:** | |
| 104. City/Town Taxes | | 404. City/Town Taxes | |
| 105. County Taxes | | 405. County Taxes | |
| 106. Assessments | | 406. Assessments | |
| 107. NON ADV TAXES Sep 29, 2017 thru Dec 31, 2017 | 30.65 | 407. NON ADV TAXES | 30.65 |
| **120. Gross Amount Due from Borrower:** | **374,357.38** | **420. Gross Amount Due to Seller:** | **369,930.65** |

| 200. Amounts Paid by or in Behalf of Borrower: | | 500. Reductions in Amount Due to Seller: | |
|---|---|---|---|
| 201. Deposit | | 501. Excess Deposit | |
| 202. Loan Amount | 295,920.00 | 502. Closing Costs Paid at Closing (J) | 32,957.80 |
| 203. Existing Loan(s) Assumed or Taken Subject to | | 503. Existing Loan(s) Assumed or Taken Subject to | |
| 204. | | 504. Payoff of First Mortgage Loan | 333,194.09 |
| 205. Seller Credit | | 505. Payoff of Second Mortgage Loan | |
| 206. Title - Insurance Seller Credit | 1,105.00 | 506. Title - Insurance Seller Credit | 1,105.00 |
| 207. | | 507. Seller Credit | |
| **Adjustments for Items Unpaid by Seller:** | | **Adjustments for Items Unpaid by Seller:** | |
| 208. City/Town Taxes | | 508. City/Town Taxes | |
| 209. County Taxes Jan 1, 2017 thru Sep 28, 2017 | 2,673.76 | 509. County Taxes | 2,673.76 |
| 210. Assessments | | 510. Assessments | |
| **220. Total Paid by / for Borrower:** | **299,698.76** | **520. Total Reductions in Amount Due Seller:** | **369,930.65** |

| 300. Cash at Settlement from / to Borrower: | | 600. Cash at Settlement to / from Seller: | |
|---|---|---|---|
| 301. Gross Amount due from Borrower (line 120) | 374,357.38 | 601. Gross Amount due to Seller (line 420) | 369,930.65 |
| 302. Less Amount Paid by/for Borrower (line 220) | -299,698.76 | 602. Less Reductions Amount due Seller (line 520) | -369,930.65 |
| **303. Cash From Borrower:** | **$74,658.62** | **603. Cash From Seller:** | **$0.00** |

| L. | Settlement Charges | | |
|---|---|---|---|
| **700.  Total Sales / Broker's Commission:** | | | |
| | Based on Price $369,900.00 @ 6.00% = $22,194.00 | | |
| | Division of Commission as follows | | |
| 701. | 11,097.00 to Exit Realty | | |
| 702. | 11,097.00 to Florida Family Real Estate | | |
| 703. | Commission Paid at Settlement | | 22,194.00 |
| **800.  Items Payable in Connection with Loan:** | | | |
| 801. | 0.00% of Loan Amount (Points) | | |
| 802. | Lien Seearch | | 75.00 |
| 803. | Title Search | | 55.00 |
| **900.  Items Required by Lender to be Paid in Advance:** | | | |
| 901. | Homeowner's Insurance Premium | | |
| 902. | Mortgage Insurance Premium | | |
| 903. | Prepaid Interest ( $243.22 per day from 9/29/2017 to 10/1/2017 ) | 486.44 | |
| 904. | Property Taxes | | |
| **1000.  Reserves Deposited with Lender:** | | | |
| 1001. | Homeowner's Insurance | | |
| 1002. | Mortgage Insurance | | |
| 1003. | Property Taxes | | |
| **1100.  Title Charges:** | | | |
| 1101. | Title - Closing Fee to Unity One, LLC | 450.00 | 1,995.00 |
| 1102. | Title - Endorsement 5.1 to Unity One, LLC | 35.00 | |
| 1103. | Title - Endorsement 8.1 to Unity One, LLC | 35.00 | |
| 1104. | Title - Endorsement FL Form 9 to Unity One, LLC | 237.45 | |
| 1105. | Title - Lender's Coverage Premium to Unity One, LLC | 1,555.00 | |
| 1106. | Title - Owner's Coverage Premium (Optional) to Unity One, LLC | | 819.50 |
| **1200.  Government Recording and Transfer Charges:** | | | |
| 1201. | Recording Fees:          Deed          0.00     Mortgage          0.00 | | |
| 1202. | Transfer Taxes - Deed State to Clerk of the Circuit Court | | 2,589.30 |
| 1203. | Transfer Taxes - Intangible Tax to Clerk of the Circuit Court | 591.84 | |
| 1204. | Transfer Taxes - Mortgage | | |
| 1205. | Transfer Taxes - Mortgage State to Clerk of the Circuit Court | 1,036.00 | |
| **1300.  Additional Settlement Charges:** | | | |
| 1301. | Assessment Dues Owed | | 4,875.00 |
| 1302. | Estople Fee to IVY Lakes Estates | | 355.00 |
| | | | |
| **1400.  Total Settlement Charges (Enter on line 103, Section J and line 502, Section K)** | | **$4,426.73** | **$32,957.80** |

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA

IN RE: LOUIS SANTANA JR
        LUANA L SANTANA

CASE NO: 16-bk-10318-CPM

**DECLARATION OF MAILING
CERTIFICATE OF SERVICE**

Chapter: 13
ECF Docket Reference No.
Judge:
Hearing Location:
Hearing Date:
Hearing Time:
Response Date:

On 7/13/2017, I did cause a copy of the following documents, described below,

Debtors' Motion to Sell Homestead Real Estate,

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing matrix exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice.com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R. Bankr.P. 9001(9) and 2002(g)(4).  A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

DATED: 7/13/2017

/s/ Nick Fowler
Nick Fowler  81856
Stamatakis, Thalji, and Bonanno
8751 N Himes Ave
Tampa, FL  33614
813 282 9330
nfowler@myinjury.com

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA

IN RE:  LOUIS SANTANA JR
       LUANA L SANTANA

CASE NO: 16-bk-10318-CPM

**CERTIFICATE OF SERVICE
DECLARATION OF MAILING**

Chapter: 13
ECF Docket Reference No.
Judge:
Hearing Location:
Hearing Date:
Hearing Time:
Response Date:

On 7/13/2017, a copy of the following documents, described below,

Debtors' Motion to Sell Homestead Real Estate,

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing matrix exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 7/13/2017

Jay S. Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Stamatakis, Thalji, and Bonanno
Nick Fowler
8751 N Himes Ave
Tampa, FL  33614

PARTIES DESIGNATED AS "EXCLUDE" WERE NOT SERVED VIA USPS FIRST CLASS MAIL
PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" RECEIVED ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM

*CASE INFO*

*DEBTOR*

1  LABEL MATRIX FOR LOCAL NOTICING
113A8
CASE 8-16-BK-10318-CPM
MIDDLE DISTRICT OF FLORIDA
TAMPA
THU JUL 13 11-36-41 EDT 2017

2  GROW FINANCIAL CREDIT UNION
PO BOX 89947
TAMPA FL 33689-0416

3  LOUIS SANTANA JR
16814 IVY LAKE DR
ODESSA FL 33556-6022

4  LUANA L SANTANA
16814 IVY LAKE DR
ODESSA FL 33556-6022

5  2009 OUTLAW RIDGE LIMITED
PARTNERSHIP
3114 E 81ST ST
TULSA OK 74137-1338

6  AMERICAN EXPRESS CENTURION BANK
CO BECKET AND LEE LLP
PO BOX 3001
MALVERN PA 19355-0701

7  ABBEY CARPET
PO BOX 94498
LAS VEGAS NV 89193-4498

8  ACHIEVA CREDIT UNION
1659 VIRGINIA ST
DUNEDIN FL 34698-7405

9  ACHIEVA CREDIT UNION
PO BOX 1500
DUNEDIN FL 34697-1500

10  ADMIN RECOVERY LLC
CO INCORP SERVICES INC
17888 67TH CT N
LOXAHATCHEE FL 33470-3275

11  ALLIED INTERSTATE LLC
CO CT CORPORATION SYSTEM
1200 S PINE ISLAND RD
PLANTATION FL 33324-4413

12  ALLY FINANCIAL
200 RENAISSANCE CTR
DETROIT MI 48243-1300

13  ALLY FINANCIAL
PO BOX 380901
BLOOMINGTON MN 55438-0901

14  AMEX
PO BOX 297871
FORT LAUDERDALE FL 33329-7871

15  AMEX
PO BOX 981540
EL PASO TX 79998-1540

16  BANK OF AMERICA
PO BOX 26012
GREENSBORO NC 27420-6012

17  BARCLAYS BANK DELAWARE
PO BOX 8801
WILMINGTON DE 19899-8801

18  BARCLAYS BANK DELAWARE
PO BOX 8803
WILMINGTON DE 19899-8803

19  BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

20  CAPITAL ONE NA
CO BECKET AND LEE LLP
PO BOX 3001
MALVERN PA 19355-0701

21  CAPITAL MANAGEMENT SERVICES LP
CO CORPORATION SERVICE COMPANY
1201 HAYS ST
TALLAHASSEE FL 32301-2699

22  CHASE CARD
PO BOX 15298
WILMINGTON DE 19850-5298

23  CHASE CARD SERVICES
PO BOX 15278
WILMINGTON DE 19850-5278

24  CHASE CARD SERVICES
PO BOX 15298
WILMINGTON DE 19850-5298

25  CHEVRON
PO BOX 5010
CONCORD CA 94524-0010

26  CITI SHELL
PO BOX 6497
SIOUX FALLS SD 57117-6497

27  CITIBANKSHELL OIL
PO BOX 790040
SAINT LOUIS MO 63179-0040

28  COMENITY BANK  THE LIMITED
    PO BOX 182125
    COLUMBUS OH 43218-2125

29  COMENITY BANKBEALLS FLORIDA
    PO BOX 182125
    COLUMBUS OH 43218-2125

30  COMENITY BANKBEALLSFL
    PO BOX 182789
    COLUMBUS OH 43218-2789

31  COMENITY BANKLIMITED
    PO BOX 182789
    COLUMBUS OH 43218-2789

32  COMENITY BANKLSWTZLND
    PO BOX 182789
    COLUMBUS OH 43218-2789

33  COMENITY BANKUNDRGEAR
    PO BOX 182125
    COLUMBUS OH 43218-2125

34  CONVERGENT OUTSOURCING INC
    CO CT CORPORATION SYSTEM
    1200 S PINE ISLAND RD
    PLANTATION FL 33324-4413

35  CREDIT COLL
    PO BOX 447
    NORWOOD MA 02062-0447

36  CREDIT COLLECTION SERVICE
    PO BOX 773
    NEEDHAM MA 02494-0918

37  DSNB MACYS
    9111 DUKE BLVD
    MASON OH 45040-8999

38  EOS CCA
    PO BOX 981002
    BOSTON MA 02298-1002

39  ESBHARLEY DAVIDSON CR
    PO BOX 21829
    CARSON CITY NV 89721-1829

40  FRONTIER COMMUNICATIONS CORP
    CO CORPORATION SERVICE COMPANY
    50 WESTON ST
    HARTFORD CT 06120-1504

41  GTE FINANCIAL
    711 E HENDERSON AVE
    TAMPA FL 33602-2509

42  GTE FINANCIAL DBA GTE FEDERAL CU
    PO BOX 172599
    TAMPA FL 33672-0599

43  GROW FINANCIAL CREDIT UNION
    PO BOX 800
    TAMPA FL 33601-0800

44  GROW FINANCIAL FCU
    9927 DELANEY LAKE DR
    TAMPA FL 33619-5071

45  GROW FINANCIAL FEDERAL CREDIT
    UNION
    PO BOX 89947
    TAMPA FL 33689-0416

46  GROW FINANCIAL FEDERAL CREDIT
    UNION CO KASS
    PO BOX 800
    TAMPA FL 33601-0800

47  GROW FN FCU
    9927 DELANEY LAKE DR
    TAMPA FL 33619-5071

48  HARLEY DAVIDSON FINANCIAL
    PO BOX 22048
    CARSON CITY NV 89721-2048

49  IVY LAKE ESTATES ASSOCIATION INC
    CO ASSOCIA GULF COAST INC
    9887 4TH ST N STE 301
    SAINT PETERSBURG FL 33702-8445

50  KASS SHULER PA
    PO BOX 800
    TAMPA FL 33601-0800

51  KOHLSCAPITAL ONE
    PO BOX 3120
    MILWAUKEE WI 53201-3120

52  KOHLSCAPONE
    N56 W 17000 RIDGEWOOD DR
    MENOMONEE FALLS WI 53051-7096

53  MACDILL AIR FORCE BKGROW FINANCIAL
    FCU
    PO BOX 89909
    TAMPA FL 33689-0415

54  OFFICE OF THE LIEUTENANT GOVERNOR
    REAL PROPERTY TAX COLLECTIONS
    5049 KONGENS GADE  18
    ST THOMAS VI 00802-6487

55  OUTLAW RIDGE OF PASCO HOA
3114 E 81ST STREET
TULSA OK 74137-1338

56  OUTLAW RIDGE OF PASCO HOA INC
CO JUAN C VILLAVECES ESQ
240 S PINEAPPLE AVE FL 10
SARASOTA FL 34236-6717

57  PINNACLE
PO BOX 130848
CARLSBAD CA 92013-0848

58  PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

59  PORTFOLIO RECOVERY ASS
287 INDEPENDENCE BLVD
VIRGINIA BEACH VA 23462-2962

60  QUANTUM3 GROUP LLC AS AGENT FOR
COMENITY BANK
PO BOX 788
KIRKLAND WA 98083-0788

61  REGIONAMS
PO BOX 216
BIRMINGHAM AL 35201-0216

62  REGIONAMSOU
2050 PARKWAY OFFICE CIR
HOOVER AL 35244-1805

63  REGIONS BANK
PO BOX 10063
BIRMINGHAM AL 35202-0063

64  REGIONS BANK
PO BOX 11007
BIRMINGHAM AL 35288-0001

65  SEARSCBNA
PO BOX 6282
SIOUX FALLS SD 57117-6282

66  SPRINGLEAF FINANCIAL SERVICES
P O BOX 3251
EVANSVILLE IN 47731-3251

67  SPRINGLEAF FINANCIAL S
600 NW 2ND ST
EVANSVILLE IN 47708-1014

68  SUNCOAST CREDIT UNION
6801 E HILLSBOROUGH AVE
TAMPA FL 33610-4197

69  SUNCOAST CREDIT UNION
PO BOX 11904
TAMPA FL 33680-1904

70  SUNCOAST CROSSINGS MASTER ASSOC
INC
CO JONATHAN A LEVY
1501 W CLEVELAND ST STE 200
TAMPA FL 33606-1812

71  SUNCOAST CU
PO BOX 11829
TAMPA FL 33680-1829

72  SUNCOAST CU
PO BOX 11904
TAMPA FL 33680-1904

73  SYNCBCARCARE ONE
CO
PO BOX 965036
ORLANDO FL 32896-5036

74  SYNCBCHEVRON
PO BOX 965015
ORLANDO FL 32896-5015

75  SYNCBCHEVRON TEXACO
PO BOX 103104
ROSWELL GA 30076-9104

76  SYNCBROOMS TO GO
PO BOX 103104
ROSWELL GA 30076-9104

77  SYNCBROOMS TO GO
PO BOX 965036
ORLANDO FL 32896-5036

78  SYNCBCIRCIT
PO BOX 965064
ORLANDO FL 32896-5064

79  SYNCBGAP
PO BOX 965005
ORLANDO FL 32896-5005

80  SYNCBGAPDC
PO BOX 965005
ORLANDO FL 32896-5005

81  SYNCBHAVERTYS
950 FORRER BLVD
KETTERING OH 45420-1469

PARTIES DESIGNATED AS "EXCLUDE" WERE NOT SERVED VIA USPS FIRST CLASS MAIL
PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" RECEIVED ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM

82  SYNCBLOWES
PO BOX 956005
ORLANDO FL 32896-0001

83  SYNCBYAMAHA
900 CONCOURSE DR
RAPID CITY SD 57703-4762

84  SYNCHRONY BANK
170 W ELECTION RD STE 125
DRAPER UT 84020-6425

85  SYNCHRONY BANK
PO BOX 965064
ORLANDO FL 32896-5064

86  SYNCHRONY BANKCAR CARE ONE
PO BOX 965064
ORLANDO FL 32896-5064

87  SYNCHRONY BANKCHEVRON
PO BOX 965064
ORLANDO FL 32896-5064

88  SYNCHRONY BANKGAP
PO BOX 965064
ORLANDO FL 32896-5064

89  SYNCHRONY BANKLOWES
PO BOX 965064
ORLANDO FL 32896-5064

90  T MOBILET MOBILE USA INC
BY AMERICAN INFOSOURCE LP AS AGENT
4515 N SANTA FE AVE
OKLAHOMA CITY OK 73118-7901

91  T MOBILE USA INC
CO CORPORATION SERVICE COMPANY
1201 HAYS ST
TALLAHASSEE FL 32301-2699

92  TD RETAIL CARD SERVICES
CO CREDITORS BANKRUPTCY SERVICE
PO BOX 800849
DALLAS TX 75380-0849

93  TARGET
PO BOX 9475
MINNEAPOLIS MN 55440-9475

94  TARGET NB
PO BOX 673
MINNEAPOLIS MN 55440-0673

95  TD RCSYARD CARD 911
1000 MACARTHUR BLVD
MAHWAH NJ 07430-2035

96  VISA DEPT STORE NATIONAL BANK
PO BOX 8053
MASON OH 45040-8053

97  WELLS FARGO DEALER SERVICES
PO BOX 3569
RANCHO CUCAMONGA CA 91729-3569

98  WELLS FARGO HM MORTGAG
7255 BAYMEADOWS WA
DES MOINES IA 50306

99  WELLS FARGO HOME MORTGAGE
PO BOX 10335
DES MOINES IA 50306-0335

100  WETHERINGTON HAMILTON PA
1010 N FLORIDA AVE
TAMPA FL 33602-3808

101  WFDSWDS
PO BOX 1697
WINTERVILLE NC 28590-1697

102  WFFNBMATTRESS GIANT
PO BOX 94498
LAS VEGAS NV 89193-4498

103  WFHM
SAN ANTONIO TX 78265

104  YAMAHAGEMB
PO BOX 103106
ROSWELL GA 30076-9106

*CM/ECF E-SERVICE*

105  LARRY S HYMAN +
PO BOX 18625
TAMPA FL 33679-8625

*CM/ECF E-SERVICE*

106  UNITED STATES TRUSTEE    TPA713 +
TIMBERLAKE ANNEX SUITE 1200
501 E POLK STREET
TAMPA FL 33602-3949

*CM/ECF E-SERVICE*

107  THOMAS A LASH ATTORNEY FOR
TRUSTEE +
LASH WILCOX  GRACE PL
4950 W KENNEDY BLVD  SUITE 320
TAMPA FL 33609-1830

*CM/ECF E-SERVICE*

108  ASHLEY PRAGER POPOWITZ +
MCCALLA RAYMER LLC
110 SE 6 ST  2400
FORT LAUDERDALE FL 33301-5056

PARTIES DESIGNATED AS "EXCLUDE" WERE NOT SERVED VIA USPS FIRST CLASS MAIL
PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" RECEIVED ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM

*CM/ECF E-SERVICE*

109  NICK FOWLER +
 STAMATAKISTHALJI AND BONANNO
 8751 NORTH HIMES AVENUE
 TAMPA FL 33614-1624

*CM/ECF E-SERVICE*

110  MATTHEW M HOLTSINGER +
 KASS SHULER PA
 PO BOX 800
 TAMPA FL 33601-0800

*CM/ECF E-SERVICE*

111  ASHLEIGH C MCKENZIE +
 ALBERTELLI LAW
 POST OFFICE BOX 23028
 TAMPA FL 33623-2028

*CM/ECF E-SERVICE*

112  NOTE  ENTRIES WITH A + AT THE END OF THE
 NAME HAVE AN EMAIL ADDRESS ON FILE IN CMECF